# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

SMITHFIELD FOODS INC., et. al.,

    **Plaintiffs,**

    **vs.**

**UNITED STATES OF AMERICA,**

    **Defendant.**

**Case No. 13-C-651**

**HON. RUDOLPH T. RANDA**

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO RECONSIDER

---

Submitted by:

Todd B. Denenberg
(Admitted Eastern District Wisconsin)
Charles R. Tuffley
(Admitted Pro Hac Vice)
Alyssa J. Endelman
(Admitted Eastern District Wisconsin)
DENENBERG TUFFLEY, PLLC
28411 Northwestern Highway, Suite 600
Southfield, MI  48034
PH:  (248) 549-3900
FX:  (248) 593-5808
*aendelman@dt-law.com*

Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................... i

I. INTRODUCTION .......................................................................... 1

II. RELEVANT PROCEDURAL BACKGROUND ................................... 3

III. ARGUMENT ............................................................................... 5

    A. Defendant's Motion Should Be Denied In Its Entirety, As Its Arguments Are Not Appropriate For A Motion To Reconsider .................. 5

    B. Defendant's Motion Should Be Denied Regarding Its Points I And II ...................................................................... 8

        1. California negligence law should be applied in this matter ............. 8

            a. California choice of law rules ............................... 8

            b. Pursuant to California's governmental interest analysis, California law should be applied regarding negligence .......................................................... 9

        2. Even if Wisconsin negligence law is applied, Defendant is still not entitled to summary judgment ......................................... 11

            a. Relevant facts ................................................... 11

            b. Defendant owed Plaintiffs a duty under Wisconsin law ...................................................................... 13

    C. Defendant's Motion Should Be Denied Regarding Its Point III, As (At The Very Least) Genuine Issues Of Material Fact Remain Regarding Defendant's Discretionary Function Defense ............... 18

IV. CONCLUSION ........................................................................... 20

CERTIFICATE OF SERVICE ............................................................ n/a

i

# I. <u>INTRODUCTION</u>

In a well-reasoned Decision and Order [ECF No. 109], this Court recently denied Defendant United States of America's ("Defendant") Motion for Summary Judgment. It properly applied California law to Plaintiffs' (Smithfield Foods, Inc. and its subrogated insurers) negligence claim, and found that genuine issues of material fact remained as to whether Defendant's negligence led to the July 5, 2009 fire at the Smithfield facility in Cudahy, Wisconsin. It also found that genuine issues of material fact existed as to whether there was a mandatory requirement that all military members and their belongings be searched prior to departing from Camp Wilson (a non-live-fire area near training grounds which were part of the Twentynine Palms Base in California).

Defendant has filed a Motion to Reconsider, arguing this Court's Decision and Order is erroneous in several respects. As will be established below, for a number of reasons Defendant's Motion lacks any and all merit, and it should summarily be denied by this Court.

First, Defendants' arguments are not appropriate for a motion for reconsideration. Some of these arguments are new arguments Defendant could have made -- but did not make -- in connection with its original Motion for Summary Judgment. The rest are arguments Defendant already made in that Motion, and now Defendant is simply asking this Court to change its mind. As this Court has made clear on numerous occasions, neither type of argument provides a basis for granting reconsideration.

Second, Defendants' contention that Wisconsin law should govern Plaintiff's negligence claim (particularly the determination of whether a duty exists) is baseless. To start, it is irrelevant whether California or Wisconsin law should apply regarding allocation of fault among multiple tortfeasors, as an **independent** choice of law determination must be made regarding

1

**each** issue in a case. With regard to duty and negligence, California and Wisconsin law are not materially different -- something Defendant itself recognized in its original Motion for Summary Judgment. Even if there was a difference, California has a predominant interest in having its negligence law applied to Plaintiffs' claim, which arises out of Defendant's negligent conduct in California. Therefore, under the applicable choice of law test (California's governmental interest analysis), California law applies here.

Third, even if Wisconsin (rather than California) law is applied, the result is the same -- Plaintiffs' negligence claims should not be dismissed. Under Wisconsin law Defendant clearly owed a duty to keep the subject M125 flare (a military grade weapon that represents a significant fire risk) secure and away from the public at large. It had procedures in place at Twentynine Palms Base to fulfill this duty, but it did not follow them here. Unfortunately, Plaintiffs paid the price for Defendant's breach of its duty.

Finally, despite Defendant's protestations to the contrary, there is ample evidence creating a genuine issue of fact as to whether Defendant breached a mandatory duty to search all marines and their packs before departing Camp Wilson. The most compelling evidence in this regard comes from Defendant's own witness, Brian Catlin.[1] This also creates an issue of fact regarding Defendant's discretionary function defense under the Federal Tort Claims Act ("FTCA"). That defense, and Plaintiffs' underlying negligence claim, should be resolved via a bench trial set for the summer of 2015. Defendant's current effort to avoid that trial should be rejected, and its Motion to Reconsider should be denied.

---

[1]     Defendant first introduced Mr. Catlin's testimony regarding Mojave Viper, and the responsibility to conduct shakedowns at Camp Wilson, almost 2½ years ago via his Declaration in support of its Motion to Dismiss. [ECF No. 76-3 Ex. G - Catlin Declaration].

2

## II.  RELEVANT PROCEDURAL BACKGROUND

Whether Defendants' current arguments are properly brought in the context of a motion for reconsideration depend in large part on the arguments Defendant previously made (or chose not to make) in its Motion for Summary Judgment.  Consequently, a brief review of those arguments (and Defendant's choice of law position in its Motion to Transfer Venue) is required.

While this matter was pending in the U.S. District Court for the Central District of California (assigned to Judge Consuelo B. Marshall), Defendant filed a Motion to Transfer Venue.  On page 8 of its Memorandum in Support [ECF No. 36-1], Defendant argued that California and Wisconsin law differed regarding apportioning liability among tortfeasors. Because (according to Defendant) Wisconsin law on apportionment should apply, Defendant asserted this was one of several reasons why this matter should be transferred to Wisconsin.  It never argued California and Wisconsin law differed regarding duty or negligence, or that Wisconsin law should also apply in that regard.  Nor did it make any such argument in its Reply Memorandum in support of that motion [ECF No. 42].

This is an important distinction.  Under California's choice of law rules, a **separate** conflict of laws inquiry must be made with respect to **each issue** in the case.  *Sullivan v Oracle Corporation*, 254 P.3d 237, 245 (Cal. 2011); *Washington Mut. Bank, FA v Sup. Ct.*, 15 P.3d 1071, 1081 (Cal. 2001); *Smith v Cimmet*, 132 Cal. Rptr.3d 276, 286 (Cal. Ct. App. 2011).  As such, it is possible for a court to conclude California law should apply to negligence, while another state's law should apply to other issues such as the measure of damages, apportionment of liability, etc.  Accordingly, if a party makes an argument that a certain state's law should apply regarding one issue, it is not the same as saying that state's law should apply to all issues in a case.

Case 2:13-cv-00651-RTR   Filed 12/22/14   Page 5 of 23   Document 116

In any event, while the Transfer motion was still pending Defendant filed its Motion for Summary Judgment. In its Memorandum in Support [ECF No. 68-1], Defendant did not argue that Wisconsin (rather than California) law should be applied regarding duty or negligence. Rather, Defendant made the following arguments:

- Defendant owed no duty of care to Plaintiffs. In this regard, Defendant cited to <u>both</u> California and Wisconsin law for the proposition that "one has a duty to exercise ordinary care under the circumstances." [ECF No. 68-1, p. 11]

- Defendant did not breach the applicable standard of care. Defendant cited to <u>both</u> California and Wisconsin law for the proposition that "whether there has been a breach will depend in part upon what is reasonable to require a person to do, or refrain from doing, under the circumstances." [ECF No. 68-1, p. 15]

- Defendant did not cause Smithfield's injury. Defendant acknowledged that <u>both</u> California and Wisconsin apply the substantial factor test to determine causation, and argued the Smithfield fire was too remote in time and place from Mr. Popp's taking the flare from Camp Wilson. [ECF No. 68-1, pp. 16-18]

- Public policy dictates that Defendant should not be held liable here. Defendant cited to the same 6 factor test (under Wisconsin law) it relies on in its Motion to Reconsider, and then stated "California courts engage in a similar policy inquiry." [ECF No. 68-1, p. 18]

- Plaintiffs' claims are barred by the FTCA's discretionary function exception, as there was no mandatory requirement that Marines or their bags be searched before exiting Camp Wilson. [ECF No. 68-1, p. 21]

In its Revised Memorandum in Opposition to Defendant's Motion [ECF No. 90], Plaintiffs noted Defendant was not arguing that Wisconsin and California law differed regarding duty or negligence:

"Because Defendant's negligence occurred in California that is the law to be applied. . .However, for the purposes of Defendant's Motion, the point is moot. Defendant concedes that Wisconsin and California law do not differ regarding the issues raised in its Motion. Because there is no material difference between California and Wisconsin law regarding the issues at hand, there are no choice of law concerns and California law should be applied." [ECF No. 90, pp. 5-6].

4

In light of this statement by Plaintiffs, if Defendant really believed that California and Wisconsin law differed regarding duty or negligence one would expect it would have said something to that effect in its Reply Memorandum [ECF No. 86]. However, Defendant remained silent - it did not dispute that California and Wisconsin law do not differ in this regard. So, as this Court accurately observed at p. 15 of its Decision and Order [ECF No. 109], Defendant never identified any difference between California and Wisconsin law regarding duty or negligence.

As this Court is well aware, Judge Marshall did not rule on Defendant's Motion for Summary Judgment. Rather, on June 7, 2013, she issued an Order granting Defendant's Motion to Transfer Venue [ECF No. 97]. One of the reasons was that California and Wisconsin law differed regarding apportioning liability among tortfeasors, and she concluded Wisconsin law regarding apportionment should apply (p. 7 of the Order). Judge Marshall made no findings whatsoever on whether California or Wisconsin law should apply regarding duty or negligence, as Defendant never made that argument (until now).

## III. ARGUMENT

### A. Defendant's Motion Should Be Denied In Its Entirety, As Its Arguments Are Not Appropriate For A Motion To Reconsider

This Court has made it abundantly clear that motions for reconsideration serve a limited function -- to correct manifest errors of law or to present newly discovered evidence. *Melville v Greer*, No. 13-CV-972 (E.D. Wis. 10/20/14)(2014 W.L. 5361304, at *2); *Seebach v Beetling Design Corporation*, ___ F. Supp.2d ___ (E.D. Wis. 2014)(2014 W.L. 4365090, at *1). Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion. *Melville*, *supra*. As this Court explained regarding a motion for reconsideration brought by the

5

plaintext in *Illumination Management Solutions v Rudd*, No. 10-C-1120 (E.D. Wis. 12/6/12)(2012

W.L. 6060967, at *2):

> However, reconsideration is not appropriately used to advance arguments or
> theories that could and should have been made before the district court rendered a
> judgment. If IMS wished to make these arguments, it could have and should have
> done so in its opposition brief. To the extent IMS did not, it waived any
> argument. And, to the extent these arguments have been made before, IMS is not
> entitled to a do over. Since IMS has not established that the Court committed a
> manifest error of law, its motion for reconsideration is denied.

All four of the primary arguments Defendant make in its Motion to Reconsider fail for

the same reasons as in *Illumination Management Solutions*. First, Defendant asserts California

and Wisconsin law differ regarding duty and negligence, and Wisconsin law should apply.

Defendant was free to make that argument in its Motion for Summary Judgment (or, for that

matter, in its Motion to Transfer Venue), but it did not. Indeed, given that, in their opposition to

Defendant's Motion for Summary Judgment, Plaintiffs pointed out that Defendant concedes

Wisconsin and California law do not differ regarding negligence, if Defendant thought

differently it should at least have said something to this effect in its Reply Memorandum.

However, it remained silent. Therefore, this argument should not be considered by this Court.[2]

Second, Defendant argues that, under Wisconsin law, it owed no duty of care to

Smithfield as the fire was too remote in time and place from Mr. Popp's taking the flare from

Camp Wilson (or, put another way, the fire was not a foreseeable consequence of its alleged

negligence). Because Defendant is now precluded from arguing that Wisconsin duty law

applies, this argument has no legal basis. Moreover, as discussed above, Defendant made this

---

[2]     As discussed above, the fact Defendant did argue California and Wisconsin law are
different regarding the allocation of responsibility among multiple tortfeasors is irrelevant. A
separate choice of law analysis must be undertaken regarding each issue in a lawsuit. Here, that
means any choice of law analysis or argument regarding the allocation of responsibility among
tortfeasors is separate and distinct from any choice of law argument or analysis regarding duty or
negligence law.

6

remoteness/foreseeability argument in its Motion for Summary Judgment (at a time when Defendant believed California and Wisconsin law were the same). This Court rejected this argument, and Defendant is not entitled to a second bite of the apple in this regard.

Third, Defendant asserts that, under Wisconsin law, there are various public policy factors which preclude a finding of liability. Once again, since Defendant is precluded from arguing that Wisconsin law applies regarding duty and negligence, there is no legal basis for this argument. In addition, Defendant made this very same argument (under both California and Wisconsin law, which at that time Defendant thought were quite similar) in its Motion for Summary Judgment. This Court was obviously not persuaded by that argument when it denied Defendant's dispositive motion, and pursuant to this Court's prior decisions Defendant is not entitled to a "do over" now.

Finally, Defendant contends it was under no mandatory duty to search marines and/or their belongings when they depart Camp Wilson, so any failure to do so is not actionable under the FTCA (by virtue of the discretionary function exception). This is nothing more than Defendant asking this Court to take a second look at this issue, as Defendant previously extensively briefed it in both its summary judgment motion briefs. That is not a valid basis for a motion for reconsideration.

Because none of Defendant's arguments are properly before this Court, for this reason alone Defendant's Motion to Reconsider should be denied. Nevertheless, Plaintiffs will now turn to the merits (or lack thereof) of Defendant's arguments, and will provide additional reasons why Defendant's Motion is baseless.

7

**B.** **Defendant's Motion Should Be Denied Regarding Its Points I And II**

The majority of Defendant's Motion is devoted to a two-part argument. First, Wisconsin duty and negligence law is different than California law, and Wisconsin law should be applied. Second, under Wisconsin law Defendant owes no actionable duty of care to Plaintiffs (Defendant makes no similar argument under California law). Defendant must prevail on both points to succeed. As will be established below, Defendant does not prevail regarding either point, and its Motion should be denied.

 1. California negligence law should be applied in this matter

  a. California choice of law rules

As this Court recognized in its Decision and Order, the transfer of venue from California to Wisconsin does not change the fact that California's choice of law rules will continue to govern this matter [ECF No. 109, p. 3]. Under California choice of law rules it is presumed that California law applies. Therefore, Defendant bears the burden of showing a compelling reason why Wisconsin, rather than California, law should be applied. *Zinser v Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001); *Forcellati v Hyland's, Inc.*, 876 F. Supp.2d 1155, 1160 (C.D. Cal. 2012).

California utilizes a three step governmental interest analysis in making choice of law determinations:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Sullivan*, 254 P.3d at 245.  With regard to the first step -- is the relevant law of each state in question the same or different -- any difference must be material to move on to steps 2 and 3.  *Keilholtz v Lennox Hearth Products*, 268 F.R.D. 330, 341 (N.D. Cal. 2010); *Washington Mut. Bank*, 15 P.3d at 1080.

> b.    Pursuant to California's governmental interest analysis, California law should be applied regarding negligence

Once again, the threshold inquiry under the governmental interest analysis is whether California and Wisconsin law differ regarding negligence (and, more specifically for the purposes of Defendant's Motion, the existence of an actionable duty of care).  As already discussed above, whether they differ regarding allocation of fault among tortfeasors (or any other issue) is irrelevant.  Contrary to Defendant's assertions, the two states' laws are not materially different.

Start with the basic test for whether a duty of care exists.  In California, the standard is found in Cal. Civ. Code §1714, which states "[e]veryone is responsible. . . for an injury occasioned to another by his or her **want of ordinary care** or skill in the management of his or her property or person" (emphasis added).  In Wisconsin, one has a duty to act with reasonable **and ordinary care** under the circumstances.  *Hornback v Archdiocese of Milwaukee*, 313 Wis.2d 294, 309, 752 N.W.2d 862, 869 (Wis. 2008); *Hoida, Inc. v M&I Midstate Bank*, 291 Wis.2d 283, 306, 717 N.W.2d 17, 28 (Wis. 2006).  Plaintiffs fail to see any real difference between these two standards for the existence of a duty of care.

Going beyond the basic standards, the similarities continue.  For example, in its Motion Memorandum (p. 6), Defendant asserts that while California law considers duty as being inherently intertwined with foreseeability, Wisconsin law does not.  Defendant is mistaken.  In Wisconsin, a duty to use ordinary care is established **whenever it is foreseeable** that a person's

9

act or failure to act might cause harm to some other person. *Boyer v Weyerhaeuser Co.*, ___ F. Supp.2d ___ (W.D. Wis. 2014)(2014 W.L. 4145414, at *7); *Hornback*, 313 Wis.2d at 308, 752 N.W.2d at 869; *Kubichek v Kotecki*, 332 Wis.2d 522, 538, 796 N.W.2d 858, 866 (Wis. Ct. App. 2011); *Gulbrandsen v H&D, Inc.*, 321 Wis.2d 410, 421, 773 N.W.2d 506, 512 (Wis. Ct. App. 2009). In Wisconsin, duty is indeed "inexorably interwoven" with foreseeability. *Olson v Ratzel*, 89 Wis.2d 227, 250, 278 N.W.2d 251 (Wis. 1979); *Tesar v Anderson*, 329 Wis.2d 240, 246 n. 7, 789 N.W.2d 351, 354 n. 7 (Wis. Ct. App. 2010).[3]

The similarities do not end there. In this case, one of Defendant's arguments (made in the context of duty when it probably is more applicable to proximate cause) is that the actions of Mr. Popp and his brother in setting off the flare constitute a superseding cause that absolves Defendant of liability. In Wisconsin, an intervening act is not superseding if it is a normal consequence of the situation and is not done in a manner that is extraordinarily negligent. *Cefalu v Continental Western Insurance Company*, 285 Wis.2d 766, 780, 703 N.W.2d 743, 750 (Wis. Ct. App. 2005). The law in California is the same. Where the risk created by the defendant's negligence exposes the plaintiff to danger from the intervening conduct, such conduct is not a superseding cause. *Leslie G. v Perry & Associates* (1996) 43 Cal. App.4th 472, 481, 50 Cal. Rptr.2d 785, 790.

---

[3]     Defendant points out that, with regard to duty, Wisconsin follows the dissent in *Palsgraf v Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928). The dissent articulated a broader view of duty, explaining that everyone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others. *Tesar*, 329 Wis.2d at 248, 789 N.W.2d at 355. Even if Defendant is correct that California follows the majority opinion in *Palsgraf*, that is a distinction without a difference. First, if so, then California has a narrower view of duty, and if a duty exists under California law it certainly exists under Wisconsin law. Second, as already discussed, this academic distinction has not resulted in any real differences in California and Wisconsin law concerning negligence.

Finally, in Defendant's Motion it argues that, under Wisconsin law, public policy forbids a duty of care being imposed on it. The public policy considerations that form the basis of this argument are quite similar in California. As proof, this Court need look no further than Defendant's own Memorandum in Support of its Motion for Summary Judgment. In it Defendant makes the very same public policy argument under Wisconsin law, and then states "California courts engage in a similar policy inquiry." [ECF No. 68-1, p. 18].

Clearly. there is no material difference between California and Wisconsin law regarding negligence. Therefore, Defendant has not met its burden regarding the first step of the governmental interest analysis, and there is no need for this Court to go to steps 2 or 3. California negligence law should be applied here[4], and Defendants' Motion to Reconsider regarding its Points I and II should be denied.

2. <u>Even if Wisconsin negligence law is applied, Defendant is still not entitled to summary judgment</u>

a. Relevant facts

Defendant's arguments regarding duty are largely based on assertions that it was unforeseeable that Mr. Popp would smuggle the flare from Camp Wilson, or that the flare would be negligently used to start a fire. In other words, the subject fire was too remote or

---

[4]     If this Court was to go further, the result would be no different. For example, with regard to Step 3, California has a very significant interest in its negligence law being applied to this matter, one which outweighs any interest Wisconsin may have. Twentynine Palms Base is the largest Marine Corps base in the world. It is the only base where "live fire" training is permitted, and soldiers from other countries come to train there. California obviously has a predominant interest in having munitions at that base stay at that base, and not find their way into the public at large. While these munitions can find their way into any state, the state most at risk is California (where the Base is located). This interest cannot be served by applying the law of another state. California law needs to be applied so that Defendant's duty to properly secure munitions at a California base, and the consequences if it fails to do so, are clear. This will also protect Wisconsin far more than if Wisconsin law is applied to regulate conduct in another state. So once again, California law should apply.

disconnected from Defendant's failure to follow its own mandatory search procedures at Camp Wilson for there to be an actionable duty of care. Before addressing Defendant's specific arguments, it is important to set forth three key facts in this regard.

First, the M125 green star cluster flare is a Class V ground munition. [ECF No. 76-3 Ex. B - Matthew Carpenter Deposition, p. 26, and Ex. C - Catlin Deposition, pp. 26, 57]. Such munitions are "designed to inflict casualties and destroy property and material" and make "no distinction between friend or foe." [ECF No. 76-3 Ex. H - USMC Combat Center Order 3500.4F, p. F-2]. Indeed, Defendant considers munitions (such as the M125 flare) to be, by their very design, "inherently" or "extremely" hazardous. [No. ECF 76-4 Ex. L - USMC Order 8020.10A, pp.1-3, 4-3, 6-3]. They can indiscriminately cause significant loss and damage. [ECF 76-3 Ex. H - USMC Combat Center Order 3500.4F, p. F-2].

Second, Defendant was aware that munitions were being stolen from Twentynine Palms Base (and from other bases as well), and the risk of theft was greatest during field exercises:

> "The loss of government property due to inadequate accountability measures, negligence, **and theft** results in significant monetary loss and directly impacts on unit readiness. . .Property losses frequently occur because regulations relating to the proper safeguarding and handling are not followed." [ECF No. 76-6 Ex. X - Marine Corps Order 4340.1A, pp. 1-2][emphasis added].

> "The Marine Corps continually trains and deploys with ammunition and explosives (A&E), which by their very design are inherently hazardous. **Careless losses, improper disposition, theft, and unauthorized use expose the public to unnecessary hazards. . . A&E is most susceptible to theft or loss during field exercises**. . . Particular care must be exercised when A&E is physically in the hands of personnel and when used A&E is being returned to a storage site." [ECF No. 76-4 Ex. L - Marine Corps Order 8020.10A, pp. 4-3, 4-9][emphasis added].

Third, with regard to the M125 flare in particular, Defendant knew its greatest hazard was starting fires. The flare burns at a temperature in excess of 3100ºC/5610ºF) [ECF No. 76-4 Ex. M - Schroeder Affidavit, ¶¶10-11]. As such, when Marines were trained regarding these flares,

12

they were warned to show great care as the flares could start fires. [ECF No. 76-3 Ex. A - Popp Deposition, pp. 105-106]. Indeed, because Twentynine Palms Base is located in the desert, it was one of the few locations where these flares could be used for training (as the danger of a fire there was minimal -- at other bases where there was a higher fire danger the M125 flare could not be used). [ECF No. 76-3 Ex B - Carpenter Deposition, pp 33-34].

   b. Defendant owed Plaintiffs a duty under Wisconsin law

  Under Wisconsin law, all persons (including Defendant) have a duty of reasonable care to refrain from those acts that unreasonably threaten the safety of others. *Ladewig v Tremmel*, 336 Wis.2d 216, 223, 802 N.W.2d 511, 515 (Wis. Ct. App. 2011). This duty of care requires that Defendant "refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act." *Hornback*, 313 Wis.2d at 309-310, 752 N.W.2d at 869; *Rockweit v Senecal*, 197 Wis.2d 409, 419-420, 541 N.W.2d 742, 747 (Wis. 1995).

  Here, Defendant was well aware of the dangers attendant to munitions finding their way out of a controlled military-use environment. In the case of the M125 flare, that danger was fire. Indeed, because of their highly dangerous (and unpredictable) nature, the realm of foreseeable injuries arising out of the misappropriation and misuse of munitions is particularly great. Taken together, this clearly establishes Defendant owed a duty to Plaintiffs (and the public at large) to keep weapons (like the subject flare) from getting into the public sector. Defendant obviously recognized this duty, as it had rules in place to search marines before they departed live training ranges or Camp Wilson. Unfortunately, those rules were not followed, and the Smithfield fire was the result.

In an attempt to persuade this Court that no actionable duty of care exists, Defendant primarily makes two arguments. First, Defendant argues Mr. Popp's theft of the flare was not foreseeable to it, and, in a related vein, the resulting fire was too remote a consequence of any negligence by Defendant to impose a duty of care.

Defendant is incorrect, as what occurred here (Mr. Popp stealing a flare, and when it was subsequently set off it caused a massive fire) was neither unforeseeable to Defendant nor remote. As discussed above, Defendant knew that someone might try to steal a flare (or some other weapon) from Twentynine Palms Base. In addition, Defendant was aware of the indiscriminate fire damage which might result from an M125 flare finding its way into the general populace. Furthermore, had Defendant followed its own mandatory shakedown procedures, Mr. Popp would not have been able to remove the flare from Camp Wilson. As such, when, in 2009, he and his brother decided to set off some form of pyrotechnic device to celebrate the 4th of July, they would have had to settle for a common firework.[5] Common fireworks do not possess the inherent potential for causing a massive fire found in a military cluster flare. Due to its negligence, Defendant in effect "placed the weapon in Mr. Popp's hands" that resulted in the Smithfield loss. Consequently, a duty of care does indeed exist.

Second, Defendant argues that even if it owed a duty of care to Plaintiffs, as a matter of Wisconsin public policy it should not be held liable for any damages. For public policy considerations to preclude liability, the case in question must be so extreme that it would shock the conscience of society to impose liability. *Fandrey v American Family Mutual Insurance Co.*,

---

[5]    Mr. Popp testified that, had they not had the M125 flare, he and his brother would not have gone out and purchased a commercial flare. [ECF No. 76-3 Ex. A - Popp Deposition, pp. 85-86].

14

272 Wis.2d 46, 63, 680 N.W.2d 345, 354 (Wis. 2004); *Tesar*, 329 Wis.2d at 250, 789 N.W.2d at

356. As further explained in *Tesar*:

> Cases in which a causally negligent tortfeasor is relieved of liability [on judicial
> public policy grounds] are infrequent and present unusual and extreme
> considerations. Using public policy factors to prevent liability is a drastic judicial
> remedy that should be employed sparingly because it denies a litigant his or her
> day in court, or, after a successful day in court, denies a litigant recovery for
> injury.

329 Wis.2d at 250-251, 789 N.W.2d at 356-357 (citations omitted).

Under Wisconsin law, six factors are examined in determining whether public policy

shields a wrongdoer from the consequences of its own negligence -- 1) the injury is too remote

from the negligence, 2) the recovery is wholly out of proportion to the culpability of the

negligent tortfeasor, 3) the harm caused is highly extraordinary given the negligent act, 4)

recovery would place too unreasonable a burden on the negligent tortfeasor, 5) allowance of

recovery would open the way to fraudulent claims, or 6) allowing recovery would enter a field

that has no sensible or just stopping point. *Hoida*, 291 Wis.2d at 312, 717 N.W.2d at 31-32;

*Augsburger v Homestead Mutual Insurance Co.*, 350 Wis.2d 486, 497, 838 N.W.2d 88, 93 (Wis.

Ct. App. 2013). Defendant argues all but the fifth factor support a finding that public policy

should immunize it from liability. Nothing could be further from the truth.

Factor #1 (remoteness) -- This has already been addressed above. The injury (the

Smithfield fire) was in no way remote from Defendant's negligence in permitting a dangerous

military grade weapon to enter the public sector. As such, this factor does not weigh in

Defendant's favor.

Factor #2 (recovery out of proportion to culpability) - Munitions are extraordinarily

dangerous instrumentalities that indiscriminately cause personal injuries and property damage.

In this instance, a munition (the M125 flare) was recklessly fired, and did what Defendant knew

15

it could do -- start a major fire. This is bad enough. However, if the flare found its way into the wrong hands, such as a person or persons wishing to commit a terrorist act, this could pose a grave threat to the public health, safety and security. Because of the potential calamity that could result, it is hardly "disproportionate" to hold Defendant liable for the consequences of its negligence, encouraging it to be more vigilant in keeping track of its munitions. Once again, this factor does not weigh in favor of shielding Defendant from liability.

Factor #3 (the harm caused was highly extraordinary) - As discussed above, the M125 green star cluster flare is a Class V ground munition, "designed to inflict casualties and destroy property and material," making "no distinction between friend or foe. It can indiscriminately cause significant loss and damage. In addition, the greatest hazard attendant to the flare is starting fires, as the flare burns at a temperature in excess of 3100ºC/5610ºF. That is why when Marines were trained regarding these flares, they were warned to show great care as the flares could start fires. Given all this, it would have been extraordinary if the flare had not started a fire. In any event, this factor does not weigh in Defendant's favor.

Factor #4 (recovery places an unreasonable burden on Defendant) - Plaintiffs do not contend Defendant had inadequate security measures in place at Twentynine Palms Base. Plaintiffs are not suggesting Defendant add any additional security measures there or elsewhere. All Plaintiffs are saying is that Defendant should follow the mandatory procedures it put in place to keep weapons out of the public sphere, including shakedowns of marines departing Camp Wilson. How can asking Defendant to follow its own pre-existing procedures be viewed as unreasonable? Clearly, this factor does not weigh in favor of exempting Defendant from liability.

Factor #6 (no sensible or just stopping point) - Defendant contends allowing recovery here will have no sensible stopping point. Defendant's argument might have more credence if, in this case, the flare which Mr. Popp removed from Twentynine Palms Base changed hands multiple times before the "end user" fired it off. In such an instance a line likely would need to be drawn where liability ends due to true remoteness. However, there is no need for this Court to draw that line in this case, as that is not what happened here. Defendant's negligence resulted in Mr. Popp removing the flare. On July 5, 2009, he handed the flare to his brother, who then fired it off (in Mr. Popp's presence). Under these circumstances, there is no reason to excuse Defendant from the consequences of its negligence, and this factor does not weigh in Defendant's favor.

None of the public policy factors suggest that Defendant should be relieved of liability. They certainly do not reach the point (either alone or together) where it would shock the conscience of society to impose liability on Defendant. Accordingly, just as with the other arguments made by Defendant[6], its public policy argument does not require that this Court reconsider its decision, and Defendant's Motion should be denied.

---

[6] There are few other arguments Defendant makes that require little discussion. For example, Defendant tries to analogize to cases involving the theft of an automobile, and whether the owner can be liable to a person who is injured by the stolen vehicle. These cases clearly are inapplicable here, as unlike an automobile the M125 flare is a military grade weapon. Indeed, for over 100 years Wisconsin courts have recognized that automobiles are not dangerous contrivances. *Steffen v McNaughton*, 142 Wis. 49, 124 N.W. 1016, 1017 (Wis. 1910).

Defendant also makes reference to negligent entrustment cases, which are distinguishable. In those cases something has been entrusted to someone to be used in the public sector. In the instant case the M125 flare was only to be used at military training ranges (or in armed conflict). However, by not following its own policies and procedures, Defendant allowed a weapon to get somewhere where it was not supposed to be. Mr. Popp was never "entrusted" to have or use the flare in the general public. Therefore, the question is not whether Defendant properly entrusted Mr. Popp with anything -- the question is whether Defendant failed to properly keep a weapon in secured areas.

17

**C.**      **Defendant's Motion Should Be Denied Regarding Its Point III, As (At The Very Least) Genuine Issues Of Material Fact Remain Regarding Defendant's Discretionary Function Defense**

When the time came for Mr. Popp and other Marines to depart Camp Wilson for Main Base, a final shakedown took place.  Mr. Popp placed his pack on one of the troop transport trucks before he could be shaken down.  [ECF No. 76-3 Ex. A - Popp Deposition, pp. 47, 145-146].  When the time came for him to be shaken down (and he had no pack to be searched), Mr. Popp informed his unit commander (Corporal Langham) that his pack was already on the truck.  That apparently was sufficient for the unit commander, who despite mandatory procedures to the contrary made no effort to search Mr. Popp's pack.  [ECF No. 76-3 Ex. A - Popp Deposition, pp. 47, 147-149].

This leads to Defendant's final argument.  It asserts that even if MCO P3570.2A[7] required shakedowns when Marines left Camp Wilson, that Order was not violated here.  Mr. Popp was patted down before he left Camp Wilson.  According to Defendant, the fact the pat down did not include Mr. Popp's pack (where had hid the M125 flare) goes to the way the pat down was conducted, rather than an absolute failure to follow a mandatory directive.

Once again, Defendant is quite mistaken.  Based on Brian Catlin's and Andres Fuentes' Depositions, Plaintiffs established that shakedowns (including the searching of packs) have been standard operating procedure throughout the Marine Corps for over 200 years.  [ECF No. 76-3 Ex. C - Catlin Deposition, pp. 29-30, and Ex. F - Fuentes Deposition, p. 37].  Indeed, at his deposition, Mr. Catlin left no room for doubt these shakedowns -- including those conducted at Camp Wilson -- were mandatory:

---

[7]      Defendant also discusses the question regarding the existence of MCO P3570.2A.  This Court succinctly and accurately addressed that issue in footnote 7 of its Decision and Order [ECF No. 109], and nothing needs to be added to that discussion.

18

Q.     Mr. Catlin, you indicated earlier. . .the standard operating procedure was for shakedowns, **<u>including the searching of packs</u>** and patting down the Marines. Correct?

A.     Correct. . .

**Q.     . . .[T]he shakedowns were. . .standard operating procedure at Camp Wilson?**

**A.     It's standard operating procedure throughout the Marines Corps. . .** Anytime you go from a live fire area or from being in the field environment back to main side at any installation throughout the Marine Corps a shakedown is required.

**Q.     And so the shakedown is not discretionary, it's required?**

**A.     Required.**

[ECF No. 76-3 Ex. C - Catlin Deposition, pp. 102-103][emphasis and underscoring added].

Therefore, a failure to conduct a shakedown at Camp Wilson (including patting down each Marine <u>and</u> searching his/her pack) constitutes a violation of standard operating procedure. [ECF No. 76-3 Ex. C - Catlin Deposition, p. 58].  Defendant's unsupported assertions to the contrary should be rejected, and its Motion should be denied.

19

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion to Reconsider be denied.

<div align="center">

Respectfully submitted,

**DENENBERG TUFFLEY, PLLC**

</div>

BY:   /s/ Alyssa J. Endelman
Todd B. Denenberg
(Admitted Eastern District Wisconsin)
Charles R. Tuffley
(Admitted Pro Hac Vice)
Alyssa J. Endelman
(Admitted Eastern District Wisconsin)
28411 Northwestern Highway, Suite 600
Southfield, MI  48034
PH:  (248) 549-3900
FX:  (248) 593-5808
*aendelman@dt-law.com*

Attorneys for Plaintiffs

DATED:  December 22, 2014

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 22, 2014, I electronically filed Plaintiffs'

Memorandum in Opposition to Defendant's Motion to Reconsider with the Clerk of the Court,

and served counsel for Defendant, using the CM/ECF System.

<div style="margin-left: 45%;">

BY:   /s/ Alyssa J. Endelman
Alyssa J. Endelman
(Admitted Eastern District Wisconsin)
DENENBERG TUFFLEY, PLLC
28411 Northwestern Highway, Suite 600
Southfield, MI  48034
PH:  (248) 549-3900
FX:  (248) 593-5808
*aendelman@dt-law.com*

Attorneys for Plaintiffs

</div>