JAMES G. TOUHEY, JR.
Director, Torts Branch
ROBIN DOYLE SMITH
Senior Trial Counsel
J. STEVEN JARREAU
Trial Attorney
JOHN A. WOODCOCK
Trial Attorney
PAUL STERN
Trial Attorney
Civil Division, Torts Branch
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
Telephone:  (202) 616-4289
Facsimile:  (202) 616-5200
robin.doyle.smith@usdoj.gov
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**SMITHFIELD FOODS, et al.,**

        Plaintiffs

        v.                      Civil Action No.: 2:13-cv-651-RTR

**UNITED STATES OF AMERICA,**

        Defendant

---

## UNITED STATES' MEMORAMDUM OF AUTHORITY IN SUPPORT OF
## ITS MOTION IN LIMINE FOR AN ADVERSE INFERENCE
## DUE TO THE SPOLIATION OF EVIDENCE

---

## INTRODUCTION

    Smithfield Foods Inc. (Smithfield), Patrick Cudahy Incorporated (PCI), and their

insurers and reinsurers (Plaintiffs), instituted this civil action pursuant to the Federal Tort

Claims Act, 28 U.S.C. §§ 1346(b) and 2671-2680.  The plaintiffs seek damages allegedly sustained when a flare that was stolen from a Marine Corps base in California started a fire that burned part of PCI's meat processing plant in Wisconsin.  The losses the plaintiffs seek to recover include damages to the buildings, the machinery and equipment that were in the buildings, and lost profits.

This motion addresses the failure of Smithfield and PCI to fulfill their legal obligations to maintain the records necessary to determine the value of machinery and equipment in all of the buildings damaged in the fire that resulted in this lawsuit. Smithfield and PCI's failure to retain these records, subsequent to both the commencement of this litigation and the promulgation of discovery by the United States, constitutes an egregious breach of their responsibilities to preserve relevant evidence. The failure of Smithfield and PCI to preserve relevant records and information, and the intentional destruction of pertinent records, warrant the court drawing an inference that the destroyed records contained information adverse to the plaintiffs.

## FACTUAL BACKGROUND

A fire occurred at the PCI facility in Cudahy, Wisconsin, on July 5, 2009.  The fire damaged a number of buildings, as well as the meat processing machinery and equipment in the buildings.  The plaintiffs initially instituted litigation in the United States District Court for the Eastern District of Wisconsin in civil action 2:11-cv-1148 on December 20, 2011.  *See* E.D. Wisc. ECF Doc. 1.  The plaintiffs voluntarily dismissed that action and re-filed their suit in the United States District Court for the Central District of California in civil action 2:12-cv- 2254 on March 16, 2012.  *See* C.D. Cal. ECF Doc. 1.

Shortly after the July 2009 fire, Continental Machinery Company (CMC) and Industrial Loss Consulting (ILC) were on site to assess the damage to PCI's machinery and equipment. CMC was initially retained by Smithfield and PCI, but has been designated by all of the plaintiffs as one of their Fed. R. Civ. P. 26 experts in this litigation. ILC was retained by Smithfield and PCI's insurance carriers. CMC and ILC were on the PCI premises before the damaged buildings were demolished and prior to the time the damaged machinery and equipment was removed. CMC asserts on the behalf of all of the plaintiffs that the value of the machinery and equipment that was damaged in the fire exceeds $84,000,000.

The plaintiffs seek compensation from the United States for the damaged machinery and equipment. The damages are calculated based on the fair market value of the equipment at the time of the fire or, alternatively, a depreciated value based on the cost of the machinery and equipment, its anticipated useful life, and its age/years in service. *See United States v. Crown Equip. Corp.*, 86 F.3d 700, 707 (7th Cir. 1996); *Schwalbach v. Antigo Electric & Gas, Inc.*, 135 N.W.2d 263, 268 (Wisc. 1965).

In its initial interrogatories and requests for production of documents served on December 11, 2012, the United States sought records and information essential to its machinery and equipment damages defense. *See* Certificate of Service, E.D. Wisc. ECF Doc. 34. The United States served the following interrogatories and received the following answers:

> INTERROGATORY NO. 4: Describe all planned capital
> expenditures (including proposals, requisitions, purchase
> orders, or other documents) contemplated or discussed
> prior to July 4, 2009 to plan for or actually acquire new or
> substantially overhaul, building assets, machinery, or

equipment at the Patrick Cudahy, Inc. plant in Cudahy, Wisconsin.

ANSWER TO INTERROGATORY NO. 4:

See attached documents bates stamped Smithfield 000230 – 000321.

INTERROGATORY NO. 5:  Identify the individuals responsible for determining the depreciation rates applied or not applied, in the Anderson Group International spreadsheets and the Continental Machinery spreadsheets. (Spreadsheets attached as Exhibits B & C).

ANSWER TO INTERROGATORY NO. 5:

Continental Machinery – Jeffery Schwenk
Anderson Group International – Mick Tallmadge.

The documents provided in response to Interrogatory No. 4, Smithfield 000230 – 000321, do not include information that would enable an accurate estimation of the value of the machinery and equipment.  *See* Exhibit A.  These records do not include machinery or equipment invoices that pre-date the fire, capital appropriation requests (CARs), accounts payable vouchers (AP vouchers), or any other financial records that would have been part of the sales tax audit.

The United States served the following requests for production and received the following responses:

4.      All documentation supporting the actual repair and replacement costs for the machinery and equipment damaged in the fire on July 5, 2009 for which the plaintiffs seek compensation in this action.

RESPONSE:

See attached documentation, bates stamped Smithfield 000013 – 000229.

4

9.      All documentation and information relied upon in calculating or determining the depreciation rates listed in the Anderson Group International spreadsheets provided with Plaintiffs' administrative claim. (Spreadsheets attached as Exhibit B).

RESPONSE:

See attached documents bates stamped Smithfield 000388 – 001288.

10.     All documentation and information relied upon in calculating or determining the depreciation rates listed in the Continental Machinery spreadsheets provided with Plaintiffs' administrative claim.  (Spreadsheets attached as Exhibit C).

RESPONSE:

See attached documents from Continental Machinery bates stamped Smithfield 000358 – 000375.

11.     All Fixed Assets records for any assets of Plaintiffs' plant in Cudahy, Wisconsin, for which Plaintiffs seek compensation in this action.

RESPONSE:

See Response to Request No. 10.

25.     Documents and reports reflecting actual capital expenditures for the Plaintiffs' plant in Cudahy, Wisconsin, detailed by asset and amount expended from May 2006 through June of 2009.

RESPONSE:

See documents attached bates stamped Smithfield 000230 – 000321.

The documents provided in response to the above requests for production do not include information that would enable an accurate estimation of the value of the machinery and equipment, with the single exception of the document bates stamped Smithfield 000023-

000024.  *See* Exhibit B.  Document Smithfield 000023-000024 provides the year of installation of significant pieces of equipment in one part of Building F.  *See* Exhibit C. The document assists in the determination of depreciated value of the equipment only if it is assumed that it was installed new.  Although machinery and equipment was used in the other buildings that were damaged in the fire, no documentation similar to Smithfield 000023-000024 has been produced to the United States for any other buildings.

 The documents produced by the plaintiffs in response to the United States' requests for production also included a CMC spreadsheet of machinery and equipment values dated September 9, 2010, and a net book value report that was either dated or printed on October 5, 2009.  These documents are bates stamped Smithfield 000025-000139 and Smithfield 000140-00229.  The CMC spreadsheet has columns for the depreciation rate and the amount of depreciation, but no information that could assist the United States in determining how these figures were calculated or the basis for the amount.  While the net book value report is of some value, the depreciation rates used in such a report are for tax purposes and do not provide the most accurate assessment of the value of Smithfield and PCI's machinery and equipment that was damaged in the fire. None of the documents produced, through either formal or informal discovery, include any machinery or equipment invoices that pre-date the fire, capital appropriation requests, accounts payable vouchers, or any other financial records that would have been part of a sales tax audit and would have been pertinent to the damages defense of the United States.  *See*  Exhibit D, Declaration of Mark L. Ewing.

 During the February 26, 2015, deposition of David Schultz, a thirty-year employee of Patrick Cudahy, Inc. and its controller for the immediate fifteen years prior

to his deposition, the United States learned that many of the documents and much of the information essential to a proper calculation of the plaintiffs' alleged machinery and equipment damages had been intentionally destroyed by PCI. Questioning by Mr. Robin Smith, counsel for the United States, revealed the following:

> Q  So we'd be interested in seeing the invoices for the -- all of the manufacturing equipment, well, really all of the items that appear on this Fixed Asset Fire Report, if you could run us a -- run us a report that would show all that. We need the CARs for those, too, I think, as you can see that coming. *I see a big smile on your face.*
>
> A  *You're talking about -- As I had said previously, our old system relating to anything that was prior to 2000 does not exist anymore.*
>
> Q  Yeah.
>
> A  We went through a sales audit that included the last three years of Ini-Track data and a partial year of SAP. Since we completed that, those AP vouchers were -- *we cleaned house.*
>
> Q  And just, when did that house cleaning occur?
>
> A  Oh, we got done with the sales tax audit, it was probably about a year ago.
>
> Q  But –
>
> A  So --
>
> Q  -- since the fire?
>
> A  Yeah.
>
> Q  It's happened since the fire?
>
> A  After the fire, yeah. And like I said, that was only for -- what would that be, 'cause it ended in fiscal 2010, so '10, '9, '8 and '7.

MR. TUFFLEY: And what happened to the invoices after that? You disposed of them or –

THE WITNESS: Yes.

BY MR. SMITH:

Q   Fiscal years '10, '9, '8 and '7, those are the ones that were disposed of, or the ones prior to that were disposed of?

A   No. Those were disposed of.
*See* Exhibit E, Depo. of David Schultz, at 162-63 (emphasis added).

Schultz's deposition confirms, at the very least, that PCI "cleaned house" in approximately February of 2014, destroying all financial records for the fiscal years 2010, 2009, 2008, and 2007, including invoices, AP vounchers, and CARs.

## LAW and ARGUMENT

Spoliation is the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). *See also Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (quoting *Silvestri*, 271 F.3d at 590). Spoliation of evidence occurs when a party "destroys evidence relevant to an issue in the case." *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001). The plaintiffs spoliated relevant evidence, namely the financial records from fiscal years 2007, 2008, and 2009, when they "cleaned house" in February, 2014, subsequent to the completion of the sales tax audit. Equally disturbing is why the plaintiffs only produced documentation addressing the installation dates of machinery and equipment for only part of a single building, Building F, when machinery and equipment of considerable value was in the other buildings as well. It is reasonable

8

to assume that if information setting forth the installation dates of equipment was available for one building, it would also be available for the machinery and equipment in the other buildings.

Spoliation is a rule of evidence and governed by federal law. *See Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002) (providing that "[t]he exclusion of documents as a sanction for nondisclosure is subject to regulation by the federal court as a matter of procedure."). A court's authority to sanction a litigant for spoliation derives from the Federal Rules of Civil Procedure and the court's own inherent powers. *See generally Turner v. United States*, 736 F.3d 274, 281-82 (4th Cir. 2013); *Adkins v. Wolever*, 554 F.3d 650, 652 (4th Cir. 2009); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D. N.Y. 2003). As has been stated by this court, "spoliation of evidence can have very severe consequences, which is only proper because it strikes at the very heart of our judicial system's truth-seeking function." *Cooper v. United Vaccines, Inc.*, 117 F. Supp. 2d 864, 874 (E.D. Wis. 2000) (citing Monte E. Weiss, *Spoliation of Evidence: A New Defense in Products Liability Cases,* 70 Wisconsin Lawyer 18 (May 1997)).

The duty to preserve evidence arises when litigation is "pending or reasonably foreseeable." *Silvestri*, 271 F.3d at 590. *See also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2nd Cir. 1999). The obligation to preserve material evidence commences not only subsequent to the institution of litigation but "also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591 (citing *Kornish v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). The parties in the instant case, Smithfield, PCI, and its insurance carriers, are sophisticated business entities. In the course of their

business, these entities are engaged in litigation, particularly the insurers who it may reasonably be assumed were well aware of their subrogation rights and so informed their insured. Whether litigation is reasonably foreseeable is determined by an objective standard "asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Technology*, 645 F.3d at 1320. Any party, from the time it learned that a flare stolen from a Marine Base started the fire, would have reasonably foreseen the institution of this litigation. It would have then been required to preserve relevant records and information, including the invoices, AP vouchers, CARs, and the other financial records utilized in a sales tax audit, particularly as these records relate to the determination of value of damaged machinery and equipment.

The scope of the duty to preserve encompasses that evidence which a party "knows, or reasonably should know, is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Zubulake*, 220 F.R.D. 217 (quoting *Turner v. Hudson Transit Lines, Inc.* 142 F.R.D. 68, 72 (S.D. N.Y. 1991)). In this case, that duty was broad. It easily included all of the records and information sought in the United States' discovery, which clearly included all machinery and equipment invoices, AP vouchers, CARs, and the other financial records utilized in sales tax audits. All of these documents are critical in determining the value of the equipment.

The duty to preserve "extends to those employees likely to have relevant information – the "key players."" *Id.* at 218. In this case, the "key players," senior

10

Smithfield and PCI personnel, were easily people with access to the evidence that should have been preserved.

Sanctions for spoliation are warranted when "the spoliating party 'intended to impair the ability of the … defendant to defend itself.'" *Micron Technology*, 645 F.3d at 1326 (quoting *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 80 (3d Cir.1994)). Bad faith is evidenced when it is shown that a party intentionally destroyed records or information that it knew would be beneficial to its adversary. *See Micron Technology*, 645 F.3d at 1326 (citing *In re Hechinger Inv. Co. of Del., Inc.,* 489 F.3d 568, 579 (3d Cir. 2007)). *See also Bracey v. Grodin*, 712 F.3d 1012, 1019 (7th Cir. 2013). Since the invoices, AP vouchers, CARs and other 2007, 2008, and 2009 records from the sales tax audit are crucial to the determination of the value of the equipment, Smithfield and PCI should have made every effort to preserve these documents. The intentional destruction of these records in early 2014, long after the instant litigation had commenced, demonstrates that the records were destroyed to impair the defense of the defendant.

The intentional destruction of relevant records and information is "rarely proved by direct evidence." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004)). District courts have "substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Greyhound Lines, Inc.*, 485 F.3d at, 1035 (quoting *Morris*, 373 F.3d at 902). The intentional destruction of records and information, such as the instant invoices, AP vouchers, CARs, and sales tax audit records, is significant evidence of bad faith. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 109 (2nd Cir. 2001). Compound

11

the destruction of the records with the reaction of Schulz, the controller of PCI, who had a "big smile on [his] face" when questioned about the records, and bad faith on the part of the plaintiffs is established. Exhibit E, Depo. of Schultz, at 162-63.

The existence of only a single record addressing the years of installation of equipment in only a single building easily raises the question of why other such records related to equipment in the other building were not produced. In light of the intentional destruction of the sales tax audit records, it calls into question whether other records setting forth the ages or years of installation of machinery and equipment in the other buildings were also intentionally destroyed.

Prejudice to the opposing party is established when it is shown that the spoliation "materially affect[s] the substantial right of the adverse party and is prejudicial to the presentation of his case." *Micron Technology*, 645 F.3d at 1328 (quoting *Wilson v. Volkswagen of Am., Inc.,* 561 F.2d 494, 504 (4th Cir.1977)). The sales tax records and information destroyed, and the unproduced documentation relative to the years of installation of machinery and equipment in buildings other than Building F, possibly also destroyed, are of particular relevance to the damages defense of the United States. These records would have enabled the United States to ascertain the cost of the machinery and equipment purchased during fiscal years 2007 to 2009 and the age of the equipment. In the absence of confirming a fair market value, the United States is being hindered in its efforts to present to this court a fair depreciated value of the machinery and equipment. The actions of the plaintiffs impeded the defendant from presenting such evidence in its defense.

# CONCLUSION

The imposition of sanctions for spoliation derives "from a court's inherent power to control the judicial process and litigation." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). The authority to sanction a litigant is, however, "limited to that necessary to redress conduct "which abuses the judicial process."' *Id.* The redress sought by the United States is limited in scope. The failure of Smithfield and PCI to preserve relevant records and information, and the intentional destruction of pertinent records long after their duty to preserve arose, warrant the court drawing an inference that the destroyed records contained information adverse to the plaintiffs. The United States, therefore, requests that the court infer that the plaintiffs' machinery and equipment was nearing the end of its useful life and had little value when the fire occurred.

Dated: June 11, 2015.

Respectfully submitted,

JAMES G. TOUHEY, JR.
Director, Torts Branch

ROBIN DOYLE SMITH
Senior Trial Counsel

*s/ J. Steven Jarreau*
J. STEVEN JARREAU
Trial Attorney

JOHN A. WOODCOCK
Trial Attorney

PAUL STERN
Trial Attorney
Civil Division, Torts Branch
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004

Telephone:  (202) 616-4289
Facsimile:  (202) 616-5200
robin.doyle.smith@usdoj.gov

*Attorneys for the United States*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of June, 2015, the United States' Motion in
Limine for an Adverse Inference Due to the Spoliation of Evidence was served by
electronic mail on the following:

Alyssa Endelman
Charles Tuffley
Todd Denenberg
Denenberg Tuffley, PLLC
One Northwest Plaza
28411 Northwestern Hwy, Suite 600
Southfield, MI 48034

Alyssa Endelman <AEndelman@dt-law.com>
Todd Denenberg <TDenenberg@dt-law.com>
Charles Tuffley <CTuffley@dt-law.com>

 *s/  J. Steven Jarreau*
J. Steven Jarreau
Trial Attorney
United States Department of Justice

14