UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SMITHFIELD FOODS, INC.,
PATRICK CUDAHY, INC.,
ALLIANZ GLOBAL RISKS US INSURANCE CO.,
ACE AMERICAN INSURANCE CO.,
GENERAL SECURITY INDEMNITY
 COMPANY OF ARIZONA,
LIBERTY MUTUAL FIRE INSURANCE CO.,
TOKIO MARINE AND NICHIDO FIRE
INSURANCE COMPANY, LTD., and
CERTAIN UNDERWRITERS AT LLOYD'S OF
LONDON AND ITS MEMBERS SUBSCRIBING
TO CONTRACT NO. DP685509(1), UNIQUE
MARKET REFERENCE B0509685509,

       Plaintiffs,

  -v-                                      Case No. 13-C-651

UNITED STATES OF AMERICA,

       Defendant.

## DECISION AND ORDER

This action arises from a historic five-day fire in July 2009 at meat-packer Plaintiff Patrick Cudahy, Inc.'s ("Patrick Cudahy") plant in the eponymous Milwaukee-area community of Cudahy, Wisconsin. The action falls under the Federal Tort Claims Act because the fire was ignited by a military flare stolen from a California military base. On June 11, 2015, the parties reached an agreement regarding liability, the June 29, 2015 court trial was cancelled, and the remaining factual issues related to

Patrick Cudahy's alleged damages due to the fire were scheduled for an eight-day court trial set to begin on November 16, 2015. Three pending motions in limine are addressed by this Decision and Order.

## ASSIGNED CLAIMS

Defendant United States' motion in limine to exclude all evidence of the non-party Bermuda insurers' assignment of claims to Plaintiff Allianz Global Risks US Insurance Co. ("Allianz") (ECF No. 155) is granted because the Plaintiffs do not object to the dismissal of the $22 million in subrogation claims that were assigned to Allianz, although they disagree regarding the effect of the dismissal. (ECF Nos. 160, 1 n.1; 165, 1.)

## ALLEGED SPOLIATION OF EVIDENCE

By its motion in limine for an adverse inference due to alleged spoliation of evidence (ECF No. 143), the United States asserts that Plaintiffs Smithfield Foods ("Smithfield") and Patrick Cudahy failed to preserve relevant records relating to property Patrick Cudahy acquired between 2007 and 2009 and intentionally destroyed them "long" after their duty to preserve the records arose, which warrants drawing an adverse inference that Smithfield and Patrick Cudahy's machinery and equipment was nearing the end of its useful life and had little value when the fire occurred. (Pl. Br. 13, ECF No. 144.)

The Plaintiffs counter: (1) to the extent that Patrick Cudahy disposed of the records, it was done pursuant to its standard corporate record-keeping practices, and there was no intent to deprive the United States of access to potentially adverse information; (2) the Defendant is not prejudiced by any disposal of missing records because the Plaintiffs have provided it with detailed spreadsheets and other evidence identifying the cost and date of purchase of Patrick Cudahy's business personal property; and (3) even if any adverse inference is warranted, the relief the defendant seeks is overbroad because the alleged spoliation relates only to business personal property acquired between 2007 and 2009, but the United States asks for a spoliation-related inference regarding all business personal property destroyed by the fire. (Pl. Opp'n Mem. 1-2, ECF No. 149.)

Prior to February 2010, Patrick Cudahy only capitalized projects ("CP") as opposed to individual assets on its books. (Schulz Decl. ¶ 4, ECF No. 149-1.) Patrick Cudahy's net book value report lists all property at the facility as of the July 5, 2009, fire. (*Id.* at ¶ 5, Ex. B.) Its fixed asset fire report lists by CP number all property at the Cudahy facility that was damaged or destroyed by the fire. (*Id.* at ¶ 3, Ex. A.) By cross referencing the two reports, for any CP one can determine: (1) the original cost; (2) the

date the project was put into service; and (3) its depreciation as of the time of the fire. (*Id.* at ¶ 6.)

The majority of Patrick Cudahy's equipment damaged or destroyed by the fire was located in the six microwave bacon lines, which were installed in 1994; or in the boiled ham department, which was placed into service prior to 1994. (*Id.* at ¶ 11.) Patrick Cudahy's practice is to conduct a sales tax audit every four years, which, among other things, covers all property purchased during the prior four-year period; the 2012 audit covered fiscal years 2007-10, the 2008 audit covered fiscal years 2003-06. (*Id.* at ¶ 8.) According to Patrick Cudahy's standard practices, purchase orders and invoices for 2007 through 2010 should have been disposed of after the completion of the 2012 sales tax audit for those years. (*Id.* at ¶ 9.)

However, after the United States served its motion, Patrick Cudahy performed another search for its records and found "<u>some</u> purchase orders dating back to February 2004," but it is not certain whether all post-February 2004 invoices were preserved. (*Id.* at ¶ 10.)

"[C]onscious destruction of documents alone "does not warrant an inference that the document[s], if produced, would have contained information adverse to the [plaintiff's] case." *Everett v. Cook Cnty.,* 655

- 4 -

F.3d 723, 727 (7th Cir. 2011) (citation omitted). Instead, "in order to draw an inference that the absent documents contained negative information, [the party seeking the inference] must show that the documents were intentionally destroyed in bad faith." *Id.* (citation omitted.)

The United States has not shown that any destruction of documents by Patrick Cudahy was in bad faith. Furthermore, it has access to other documents regarding the claimed losses which should allow it to analyze the claimed damage amounts. Additionally, despite Patrick Cudahy's uncertainty, the purchase orders and invoices for the subject years may exist. Even if the United States had shown spoliation of the subject documents, the inference it requests is overbroad. Based on the foregoing, the United States' motion for an adverse inference based on spoliation is denied.

## TESTIMONY OF THREE KRAFT EMPLOYEES

The Plaintiffs' Civil L. R. 7(h) expedited non-dispositive motion (ECF No. 157) seeks to preclude the United States from introducing evidence at trial from three former or current Kraft Foods ("Kraft") employees — Ray Wojtak, Stacie Kasten, and Timothy Walsh — whom they anticipate would testify that Kraft stopped purchasing products from Patrick Cudahy in 2011 not because of the 2009 fire, but because it was

- 5 -

dissatisfied with Patrick Cudahy's products and found another supplier. The Plaintiffs, citing *Saudi v. Valmet-Appleton, Inc.*, 219 F.R.D. 128, 131 (E.D. Wis. 2003), assert that the United States should be barred from calling the Kraft employees as witnesses because it did not comply with its Rule 26(a) disclosure obligations.

In its opposition to the motion, the United States maintains that it was the Plaintiffs who did not comply with their Rule 26(a) disclosure obligations. It also contends that the Kraft witnesses will be used for impeachment and are exempt from the disclosure requirements. *See* Fed. R. Civ. P. 26 (a)(3)(A).

The Plaintiffs' lead counsel, Todd B. Denenberg, avers that on September 14, 2012, as a part of their initial disclosures, the Plaintiffs supplied the United States with the Master External Manufacturing Agreement (the "Contract") between Kraft and Patrick Cudahy. (Denenberg Decl. ¶2, ECF No. 158.) Trial attorney for the United States, John Woodcock, avers that the Plaintiffs' initial disclosures as subsequently supplemented twice do not include a copy of or any references to the Contract. (Woodcock Decl. ¶ 8, ECF No. 164.) A November 3, 2015, email from Alyssa Endelman, who also represents the Plaintiffs, states that the Contract was produced in response to a March 5,

2013 subpoena. (ECF No. 163-1.) Whether the Contract was produced in September 2012 or sometime after the United States served its March 2013 subpoena is disputed and cannot be determined without further factual development.

However, there is no dispute that on May 29, 2015, the United States requested additional documents relating to the Contract. (Denenberg Decl. ¶ 3, Ex. A, ECF No. 158-1.) The Plaintiffs produced responsive documents on June 11, 2015. (*Id.* at ¶ 4.) On October 27, 2015, three days before revised trial witness lists were due, the United States informed the Plaintiffs that it would call the three Kraft employees as witnesses. (*Id.* at ¶ 6, Ex. B, ECF No. 158-2.)

As explicitly stated in Fed. R. Civ. P. 26(a)(1)(E): "A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or *because another party has not made its disclosures.*" (Emphasis added.)[1]  With respect to initial disclosures, Rule 26(a)(3)(A) states, "[i]n addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following

---

[1] Furthermore, under the United States' version of events, the Contract was produced in response to its March 2013, subpoena. It also obtained supplemental documents relating to the Contract in mid-June 2015.

- 7 -

information about the evidence that it may present at trial *other than solely for impeachment.*" (Emphasis added.) Additionally, regarding the time for pretrial disclosures, Rule 26(a)(3)(B) states: "Unless the court orders otherwise, these disclosures must be made at least 30 days before trial."

With respect to sanctions based on the failure to disclose, Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.* In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

(Emphasis added.) The orders listed in 37(b)(2)(A)(i)-(vi) are:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; . . .

The determination of whether a Rule 26(a) violation is justified or harmless is a matter of this Court's discretion. *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003). However, the following factors should guide the Court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Id.*

The saying goes that sometimes the best defense is a good offense; however, that approach by the Defendant in response to the Plaintiffs' motion to exclude the three Kraft witnesses fails. The date the Plaintiffs disclosed the Contract is the subject of a factual dispute requiring credibility determinations that cannot be made without an evidentiary proceeding. However, any alleged withholding of information by the Plaintiffs cannot be relied upon by the United States to excuse its non-compliance with initial disclosure requirements. *See* Fed. R. Civ. P.

- 9 -

26(a)(1)(E). *See also Saudi,* 219 F.R.D. at 133 (stating that without information relating to any attempt to resolve a discovery dispute, "Saudi's ad hoc attempt to blame Valmet-Appleton for his failure to meet his discovery obligations . . . is unpersuasive.").

The United States disclosed the three Kraft witness on October 27, 19 days before trial. The parties filed final pretrial reports in June 2015 (ECF Nos. 136, 139), and those reports should have included all trial witnesses on the issues of liability and damages. The United States' list of 54 witnesses did not include Wojtak, Kasten, or Walsh. The parties did not have advance knowledge of the October 29 due date for revised pretrial reports, it was set by the Court's October 21, 2015, order. (*See* ECF No. 150.) The United States' revised witness list includes the three Kraft witnesses. (ECF 159-1). The United States has not presented any facts that could explain its non-disclosure of the three Kraft witnesses until October 27. And its contention that they will be used solely for impeachment may simply be a last ditch effort to fend off sanctions. The United States has not shown substantial justification for its failure to meet disclosure obligations.

The United States also maintains that the Plaintiffs will not be prejudiced because the three Kraft witnesses were known to them as

having direct personal knowledge about Kraft's decision to terminate the relationship. The second standard set forth in Rule 37(c) is harmlessness. "The Seventh Circuit has employed this framework explicitly." *Saudi*, 219 F.R.D. at 132 (quoting *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, at 742 (7th Cir.1998) ("[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless") and citing *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th Cir. 1996)). While Rule 37(b)(2)(A)(i) through (vi) affords courts discretion to impose other sanctions, the self-executing exclusion sanction is the default as indicated by Rule 37(c)(1) and the advisory committee note to its 1993 amendment.

As this Court emphasized in *Saudi,* the importance of lay "witness disclosures and the harms resulting from a failure to disclose need little elaboration. When one party does not disclose, the responding party cannot conduct necessary discovery, or prepare to respond to witnesses that have not been disclosed." *Saudi*, 219 F.R.D. at 134. The United States has not presented facts that could establish its untimely disclosure of the three Kraft witnesses to be harmless.

Therefore, the Plaintiffs' motion is granted to the extent that Wojtak, Kasten, and Walsh may not be called by the United States as a

- 11 -

Case 2:13-cv-00651-LA   Filed 11/10/15   Page 11 of 12   Document 167

part of its defense, and denied to the extent that such witnesses may still be called for impeachment purposes.

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

The Defendant's motion in limine for an adverse inference due to alleged spoliation of evidence (ECF No. 143) is **DENIED**;

The Defendant's motion in limine to exclude all evidence of the non-party Bermuda insurers' assignment of claims to Allianz (ECF No. 155) is **GRANTED**; and

The Plaintiffs' Civil L.R. 7(h) expedited non-dispositive motion to preclude introduction of evidence at trial from Kraft employees Wojtak, Kasten, and Walsh (ECF No. 157) is **GRANTED** to the extent that the three Kraft witnesses may not be called by the United States as a part of its defense and **DENIED** to the extent that the Plaintiffs seek to preclude any of them from being called solely for the purpose of impeachment.

Dated at Milwaukee, Wisconsin, this 10th day of November, 2015.

                                          **BY THE COURT:**

                                          */s/ Rudolph T. Randa*
                                          **HON. RUDOLPH T. RANDA**
                                          **U.S. District Judge**