IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SMITHFIELD FOODS INC., et al.,

    Plaintiffs,

  v.

UNITED STATES OF AMERICA,

    Defendant.

Case No.: 2:13-cv-651-RTR

Hon. Rudolph T. Randa

_____

Reply Brief in Support of Defendant United States of America's
Motion for Partial Judgment on the Pleadings, or, Alternatively,
Partial Summary Judgment Dismissing Claims Asserted by
Plaintiff Allianz Global Risks US Insurance Company as
Purported Assignee of Non-Party Bermuda Insurers

---

BENJAMIN M. MIZER
Principal Deputy Assistant Attorney General
JAMES G. TOUHEY, JR.
Director, Torts Branch
ROBIN DOYLE SMITH
Senior Trial Counsel
Torts Branch
JOHN A. WOODCOCK
Trial Attorney, Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
(202) 616-5200

Attorneys for Defendant
UNITED STATES OF AMERICA

Pursuant to this Court's order, (Doc. 163) the United States respectfully submits this reply brief in further support of the Defendant's Motion for Partial Judgement on the Pleadings, or, Alternatively Partial Summary Judgment Dismissing Claims Asserted by Plaintiff Allianz Global Risks US Insurance Company as Purported Assignee of Non-Bermuda Insurers (Doc. 151).

The United States moved to dismiss the claims asserted by one of the six Plaintiff Insurers, Allianz Global Risks US Insurance Company ("Allianz"), as assignee of two non-party Bermuda insurers, ACE Bermuda Insurance, Ltd., and Arch Insurance (Bermuda), a division of Arch Reinsurance, Ltd.) (collectively, the "Bermuda Insurers."). Doc. 151. Plaintiffs agreed to the dismissal of the assigned claims. Doc. 165 at 1. A question remains, however, as to the impact of this dismissal on the recovery of the six Plaintiff Insurers in this litigation. Plaintiffs briefed this issue before trial. *Id.* Because its resolution raised pure legal issues, the Court extended briefing until after trial. Min. Entry, Doc. 163. The United States now replies.

**Argument in Reply**

The relevant facts are few and undisputed. Smithfield and its subsidiary, PCI, were paid a total of $208 million to settle their insurance claims arising out of the fire. Of this $208 million, $22 million (*i.e.*, 10.58%) was paid by the two Bermuda

2

Case 2:13-cv-00651-RTR   Filed 01/22/16   Page 2 of 9   Document 189

Insurers, while the remaining balance of $186 million (*i.e.*, 89.42%) was paid by the six Plaintiff Insurers. *See* Doc. 165 at 1.[1]

As a result of these payments, the two Bermuda Insurers and the six Plaintiff Insurers each became partially subrogated to Smithfield's and PCI's rights against the United States. *See United States v. Aetna Surety Co.,* 338 U.S. 366, 380-381 (1949) ("If the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name . . . . If it has paid only part of the loss, both the insured and insurer (*and other insurers, if any, who have also paid portions of the loss*) have substantive rights against the tortfeasor *which qualify them as real parties in interest.*") (emphasis supplied).[2]

Had the two Bermuda Insurers joined the six Plaintiff Insurers in bringing this lawsuit, the Bermuda Insurers would have been entitled to a combined share of 10.58% of any recovery from the United States, while the six Plaintiff Insurers would have divided the remaining 89.42% of any recovery amongst themselves. *See Standard Marine Ins. Co. v. Westchester Fire Ins. Co.,* 93 F.2d 286, 288 (2d Cir. 1937) ("[C]oinsurers

---

[1] The amounts paid by each of the eight insurers and their relative shares were as follows: (1) Allianz ($67,600,000 – 32.50%); (2) ACE American ($45,000,000 – 21.63%); (3) Liberty Mutual ($20,800,000 – 10.00%); (4) Tokio Marine ($5,800,000 – 2.79%); (5) GSICA ($15,600,000 – 7.50%); (6) Certain Underwriters at Lloyds of London, etc. ($31,200,000 – 15.00%); (7) ACE Bermuda Insurance Ltd. ($11,600,000 – 5.58%); (8) Arch Insurance (Bermuda) ($10,400,000 – 5.00%).

[2] Although Smithfield and PCI joined this litigation, it is now clear that they suffered no uninsured losses since the amount they were paid to settle their insurance claims ($208 million) far exceeded the amount of damages they sustained as a result of the fire (which even Plaintiffs contend amounted to no more than $178,565,989). The upshot is that Smithfield and PCI are not real parties in interest since their entire loss as a result of the fire was paid for by insurance.

3

who recover from a tort-feasor money which they have paid to an insured must share pro-rata the recovery, i.e., must share to the extent of their respective risks.") (citing, *inter alia, Standard Marine Ins. C. v. Scottish Metropolitan Assur. Co.,* 283 U.S. 284, 287 (1931)); 16 Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, COUCH ON INSURANCE § 223:97 (3d ed. 2015) ("When coinsurers recover from a wrongdoer by way of subrogation, they share pro rata in the recovery and the distribution is made proportionately to the amount contributed by each coinsurer.") (footnotes omitted).

However, rather than joining this action as plaintiffs, the Bermuda Insurers instead assigned their subrogation rights to Allianz so that Allianz could prosecute these rights as the Bermuda Insurers' assignee in this litigation. Under the terms of the assignment agreement between the Bermuda Insurers and Allianz, the Bermuda Insurers' combined share of any recovery was to be the same 10.58% to which they would have been entitled had they directly participated in the litigation as plaintiffs.[3] As Plaintiffs have now conceded, this attempted assignment by the Bermuda Insurers violated the Anti-Assignment Act, 31 U.S.C. § 3727, and it therefore is unenforceable as against the United States.

Consistent with the general principles governing subrogation and the case-law construing the Anti-Assignment Act, the United States contends that since the

---

[3] In consideration for the assignment, Allianz was to be entitled to one percent (1%) of the Bermuda Insurers' combined share in the total recovery, and the Bermuda Insurers were to be responsible for the additional litigation expenses Allianz was required to pay under a separate Agreement for Joint Prosecution of Claims as a result of the assignment.

4

assigned claims are subject to dismissal, the Court should reduce any recovery by the six Plaintiff Insurers by a factor of 10.58% to account for the combined share of the absent Bermuda Insurers, leaving the six Plaintiff Insurers in precisely the same position they would have been in if the Bermuda Insurers had joined them in bringing this action as plaintiffs.

As the cases construing the Anti-Assignment Act establish, "an attempted assignment of a claim against the United States does not forfeit the claim. It leaves the claim where it was before the purported assignment." *Colonial Navigation Co. v. United States,* 181 F. Supp. 237, 240 (Ct. Cl. 1960). *Accord, e.g., Northrop Grumnan Computing Sys., Inc. v. United States,* 709 F.3d 1107, 1113 (Fed. Cir. 2013); *Saint John Marine Co. v. United States,* 92 F.3d 39, 45 (2d Cir. 1996).

Accordingly, as Plaintiffs themselves acknowledged, even after the United States objected to the invalid assignment, nothing "prevent[ed] the Bermudian Insurers from joining in this action in their own right." Doc. 165 at 5 n.1 (citing *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 794 (D.C. Cir. 1983), *cert. denied,* 467 U.S. 1210 (1984)). For undisclosed reasons, however, the Bermuda Insurers have elected not to do so. *See id.*

Where fewer than all the insurers who have paid portions of an insured's loss bring an action to enforce their subrogation rights, the United States can sometimes compel the joinder of the absent insurers. Here, however, the Bermuda Insurers cannot be compelled to join the lawsuit because, having specifically arranged their affairs so that they do not transact business in the United States, they are not be

5

subject to the jurisdiction of the American courts. *See United States v. Aetna Surety Co.*, 338 U.S. at 382 ("[T]here will be cases in which all the parties cannot be joined because one or more are outside the jurisdiction, and the court may nevertheless proceed in the action under Rule 19(b).").

The fact that the Bermuda Insurers have elected not to participate in this lawsuit (and cannot be compelled to do so) affords no basis for depriving the United States of the protections of the Anti-Assignment Act, which is intended to "enable the Government to deal only with the original claimant," and "to save to the United States defenses which it has to claims by an assignor by way of set-off, counterclaim, etc., which might not be applicable to the assignee." *United States v. Shannon,* 342 U.S. 288, 291-292 (1952) (citations and internal quotation marks omitted).

Seen in this light, Plaintiffs assertion that the United States is seeking to "punish" them is baseless. Under the approach proposed by the United States, the six Plaintiff Insurers are no worse off than they would have been if the Bermuda Insurers had directly participated in the litigation. Under Plaintiffs' approach, on the other hand, the six Plaintiff Insurers actually would be better off in that they would recover substantially more than they would have recovered if the Bermuda Insurers had joined them as plaintiffs. If the six Plaintiff Insurers kept this additional recovery, it would represent a windfall to them; if they were to turn it over to the Bermuda Insurers, the latter would have succeeded in evading the Anti-Assignment Act's strictures.

6

Finally, Plaintiffs misread the *Standard Marine* case. There, a British insurer (Standard Marine) sought part of an award made to the United States on behalf of an American insurer (Westchester Fire). The award was made pursuant to the Treaty of Berlin. That treaty, adopting provisions of the Treaty of Versailles, enabled the United States to recover for injuries to its nationals caused by Germany during the First World War. Any award under the Treaty of Berlin extended only to "damages suffered by American nationals." *Id.* at 287. Despite this limitation, Standard Marine sought damages from Westchester Fire arguing that it "received its award as trustee for its reinsurers and coinsurers," including Standard Marine. *Id.*

In determining whether Standard Marine could recover from Westchester, the Second Circuit concisely stated the rule that ordinarily governs cases involving multiple insurers who together have paid an insured's loss: "[I]n the ordinary case, where claims by sovereigns are not involved, reinsurers and co-insurers who recover from a tort-feasor money which they have paid to an insured must share pro-rata in the recovery, i.e., must share to the extent of their respective risks." *Standard Marine Ins. Co.,* 93 F.2d at 288. But, the court noted, the case before it was no ordinary case. The money at issue was recovered not from a tortfeasor, but from a sovereign under a treaty which itself precluded recovery "on behalf of underwriters that were not its own nationals." *Id.* at 289. Thus, the rule governing distribution among coinsurers of money recovered from a tortfeasor simply was inapplicable.

In short, *Standard Marine* presented extraordinary facts justifying departure from the "ordinary doctrines affecting the rights and duties among insurers." *See id.*

7

at 289. The money at issue was not recovered from a tortfeasor, but a specific compensation agreed to by Germany and the United States. Finding that co-insurers could recover pro-rata would have frustrated the very purpose of the treaty and congressional intent by, in effect, compensating a non-national insurer. *Id.* at 289.

None of the unique circumstances which led the court to reject application of the pro-rata doctrine in *Standard Marine* are even remotely at play here. Indeed, this case typifies "the ordinary case where . . . coinsurers who recover from a tort-feasor money which they have paid to an insured must share pro rata in the recovery." *See id.* at 288. Plaintiffs simply cannot be analogized to defendant Westchester. Instead, under ordinary subrogation principles, "each insurer has a beneficial interest proportioned to the amount he contributed." *Id.*[4]

## Conclusion

For the reasons stated and upon the authorities cited, the Court should reduce its assessment of damages by 10.58% to account for the combined share of the Bermuda Insurers, who have elected to absent themselves from this litigation.

---

[4] Similarly misplaced is Plaintiffs' reliance on *American Family Mut. Ins. Co. v. United States*, No. 14-cv-1269, 2015 WL 3970134 (E.D. Wis. June 30, 2015). *American Family* did not involve apportionment of recovery among coinsurers, but instead a claim that had been asserted by an insurer as the assignee of its insured. The case therefore is readily distinguishable from this one. Moreover, the court simply did not address or explain how the dismissal of the $500 assigned claim affected recovery, let alone engage in any extended analysis or discussion of this issue. Given the small amount involved, that is no surprise. In all events, *American Family* does not even remotely support Plaintiffs' position in this case.

Respectfully submitted,

BENJAMIN M. MIZER
Principal Deputy
Assistant Attorney General

JAMES G. TOUHEY, JR.
Director, Torts Branch

ROBIN DOYLE SMITH
Senior Trial Counsel

 /s/  *John A. Woodcock*
JOHN A. WOODCOCK
Trial Attorney
Civil Division, Torts Branch
United States Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20004
Telephone:  (202) 616-4233
Facsimile:  (202) 616-5200
Jack.woodcock@usdoj.gov
*Attorneys for the United States*

Dated:  January 22, 2015